**In re Estate of Saylor**

C.P. of Berks County, no. 6-97-0095.

*Edwin L. Stock,* for co-executor Gregory.
*John M. Elliott,* for co-executor Krafczek.

SCHMEHL, *P.J.,* June 10, 1998—This opinion is written in response to the appeal of this court's April 6, 1998 order appointing Elliott, Reihner, Siedzikowski & Egan P.C. as sole counsel to represent the Saylor estate in ongoing litigation with Exide. The litigation deals generally with alleged lead contamination of land held by the estate of Josephine A. Saylor with Ms. Gregory, decedent's daughter, and Adam B. Krafczek Sr., Esquire, as co-executors of said estate.

Before her death, Josephine A. Saylor hired the law firm of Mylotte, David & Fitzpatrick, on a contingency fee basis, to commence an action against Exide. Shortly after her mother's death, Ms. Gregory signed a second contingent fee agreement with the Mylotte firm. Ms. Gregory testified that Mr. Krafczek agreed to the Mylotte firm's representing the estate in the Exide litigation with Mr. Krafczek doing the rest of the estate work. Mr. Krafczek, however, alleged in his pleadings that Ms. Gregory never notified or consulted with him nor did she give him the opportunity to review the new fee agreement. Furthermore, John Fitzpatrick, Esquire, of the Mylotte firm, testified that he never contacted or consulted with Mr. Krafczek regarding the new contingent fee agreement. Mr. Krafczek did not sign the fee agreement.

Mr. Krafczek alleged in his pleadings that he attempted to contact Mr. Fitzpatrick in late February 1997 in connection with the Exide litigation, but Mr. Fitzpatrick did not return his calls. On February 25, Mr. Krafczek forwarded a letter to Mr. Fitzpatrick advising him of his status as co-executor and that it would be appropriate to file a suggestion of death and substitute

the co-executors as plaintiffs in the Exide litigation. Mr. Krafczek also requested Mr. Fitzpatrick to call to discuss the case. Because Mr. Fitzpatrick took no action, Mr. Krafczek, on March 12, sent another request for information to Mr. Fitzpatrick. In the letter, Mr. Krafczek also suggested that he may have some new or additional ideas that would be helpful in the Exide litigation. Approximately a week later, Mr. Fitzpatrick responded and indicated that he would be filing a suggestion of death within the next few days, which he did not do. As a result of the foregoing lack of communication and lack of cooperation, Mr. Krafczek formally retained the Elliott firm to represent him as co-executor in the Exide litigation.

The Elliott firm prepared an entry of appearance on behalf of Mr. Krafczek as well as a statement of death and various other documents to substitute Mr. Krafczek and Ms. Gregory as co-executors as the plaintiffs in the Exide litigation. These documents were forwarded to Mr. Fitzpatrick as co-counsel for his review and execution. Mr. Fitzpatrick, however, failed to communicate or cooperate with the Elliott firm as co-counsel. He did not respond to the documents sent by the Elliott firm, and he never executed the substitution prepared by the Elliott firm. Attorney Elliott, by letter, advised Mr. Fitzpatrick that if Mr. Elliott did not receive a response, the Elliott firm would file the necessary documents. Mr. Fitzpatrick again failed to respond, and the Elliott firm filed the documents on behalf of Mr. Krafczek. All defendants and Mr. Fitzpatrick were served with these documents. The previous day, however, Mr. Fitzpatrick filed several documents without the prior

authorization, consent, or knowledge of Mr. Krafczek or the Elliott firm. Mr. Krafczek and his counsel allegedly learned of the filing of these documents, as well as the filing of the complaint, by way of a newspaper article appearing in the *Reading Eagle-Times*. Mr. Fitzpatrick never gave the Elliott firm or Mr. Krafczek any notice that he was filing a substitution of parties or a complaint on behalf of Mr. Krafczek. Mr. Fitzpatrick did not give Mr. Krafczek a copy of the complaint doing what he "understood was appropriate with respect to [his] client which was Ms. Gregory." N.T., p. 76.

Despite Mr. Krafczek's being a co-executor and being represented by counsel, Mr. Fitzpatrick never obtained any authorization or consent to file anything on behalf of Mr. Krafczek.[1] Furthermore, Mr. Fitzpatrick failed to serve a copy of any of these pleadings, or drafts thereof, upon Mr. Krafczek or his counsel of record. The Elliott firm obtained copies of these documents directly from the prothonotary's office.[2] Also, the complaint misrepresented that the Mylotte firm was the attorney for Mr. Krafczek, who was represented by the Elliott firm. Mr. Krafczek was never represented by the Mylotte firm.

---

1. When asked at the hearing whether he had Mr. Krafczek's authority to file the complaint in Mr. Krafczek's name, Mr. Fitzpatrick stated, "I did not have Mr. Krafczek's authority, no." N.T., p. 81.

2. The Elliott firm first received a copy of the complaint, dated May 9, from Mr. Fitzpatrick as an exhibit attached to another filing, dated May 30. At the hearing, Mr. Fitzpatrick claimed, "I don't know the exact procedure in which [the Elliott firm] got a copy of the complaint." N.T., p. 79. He "didn't send it to [them] on the day it was filed . . . ." N.T., p. 78.

After service of Mr. Fitzpatrick's complaint, defendant's counsel requested from Mr. Fitzpatrick an extension to file an answer. The Elliott firm was never informed of the request for the extension and never consented to it, but nevertheless, was advised by defendant's counsel that Mr. Fitzpatrick granted an extension. When asked if he ever notified Mr. Krafczek about the extension request, Mr. Fitzpatrick replied, "of course not." N.T., p. 88. Mr. Fitzpatrick has failed to keep Mr. Krafczek and his counsel advised of any developments in the Exide litigation,[3] and he has not copied Mr. Krafczek or his counsel with any correspondence or pleadings filed in the Exide litigation.

The Elliott firm petitioned for leave to file an amended complaint in the Exide litigation and the presiding judge, the Honorable Thomas J. Eshelman, stayed all proceedings and required that depositions be completed within 60 days. The Elliott firm attempted to depose Mr. Fitzpatrick and Ms. Gregory but was forced to move to compel the depositions.

The lack of cooperation between the parties and their counsel culminated in a petition for citation why Mr. Fitzpatrick and the Mylotte firm should not represent the estate in the Exide litigation. Ms. Gregory believes that it was her mother's intent to have Mr. Fitzpatrick and the Mylotte firm conduct the Exide litigation and for that reason they should continue to be the sole

---

3. Mr. Fitzpatrick testified that he "had one or two conversations on the phone with Mr. Krafczek and . . . wrote a letter to him on March 20, 1997." N.T., p. 67. He had no other contact. He also never talked to Mr. Elliott or sent him a letter—he did not respond to the correspondence of Mr. Elliott.

counsel for the estate in that matter. Mr. Krafczek wants the Elliott firm to represent the estate because of Mr. Fitzpatrick's lack of cooperation and because he feels that the Elliott firm is better qualified to handle the litigation.

Testimony at the hearing elicited the fact that Mr. Fitzpatrick and his law firm have extensive background in environmental litigation, although they have handled no cases dealing directly with lead or lead pollution. In the brief testimony of Attorney Blazey, who is a partner in the Elliott firm, it was clear that he had at least the same amount of expertise in environmental litigation and, in particular, has handled cases dealing with lead and its ill effects on the environment and groundwater, etc.

The court decided that the Elliott firm is the more appropriate firm to act as counsel in this matter for the following reasons:

In Ms. Gregory's entire case, her attorney, Mr. Fitzpatrick, never explained why, from the outset of his involvement in this case, he had little or no contact with Mr. Krafczek with regard to the status of the litigation. There were a series of letters written by Mr. Krafczek requesting further information about the status of the litigation, but Mr. Fitzpatrick viewed himself as representing Ms. Gregory and not Mr. Krafczek and so testified several times.[4] He acknowledged that he felt no obligation to take instruction from or inform Mr.

---

4. *E.g.* "[M]y client . . . was Miss Gregory." N.T., p. 76. "My client in the litigation has been, as instructed to me, Nancy Saylor Gregory and the estate." N.T., p. 82.

Krafczek about what was going on, even though he represented himself as Mr. Krafczek's attorney in the complaint.[5] He acknowledged that the complaint was filed without having presented even a draft of same to Mr. Krafczek and well may not have even presented the complaint to Ms. Gregory.[6] "A lawyer should maintain communication with a client concerning the representation." R.P.C. Preamble. "A lawyer shall abide by a client's decisions concerning the objectives of representation . . . *and shall consult with the client* as to the means by which they are to be pursued." R.P.C. 1.2. (emphasis added) Furthermore, R.P.C. 1.4(a) provides: *"[a] lawyer shall keep a client informed* about the status of a matter and *promptly comply with reasonable requests for information."* (emphasis added) The estate was Mr. Fitzpatrick's client and obviously the estate acted through its representatives, Mr. Krafczek and Ms. Gregory. Informing and consulting with the estate necessarily required Mr. Fitzpatrick to inform and consult with the co-executors in order to faithfully comply with his duties.

The probable complexities of this litigation aside, there is no excuse for Mr. Fitzpatrick's acknowledged disregard of Mr. Krafczek's legitimate questions and

---

5. Mr. Fitzpatrick "did not take any directions from Mr. Krafczek and, in fact, [he] discussed the litigation that [he] was involved in with Ms. Gregory and did not take directions from Mr. Krafczek. So the fact that [Mr. Krafczek] suggested that [Mr. Krafczek] would direct [him] in this, [he] did not take that as something that [he] was supposed to follow." N.T., p. 87. Mr. Fitzpatrick "never consulted with Mr. Krafczek about any part of the litigation." N.T., pp. 88-89.

6. "I did not—I do not believe I supplied a written copy of the complaint to [Ms. Gregory] before I filed it." N.T., p. 81.

inquiries about what was going on in the litigation. It is the view of the court that were he and his firm to continue as counsel, there would have been an ongoing disregard of the legitimate concerns and inquiries of Mr. Krafczek as co-executor. It is true that Mr. Krafczek is free to renounce as co-executor, but he is certainly under no obligation to do so. While he so serves he is liable for any failure to have the estate administered properly. He is caught between a rock and a hard place— if he stays on, he has to deal with a firm that has demonstrated rather consistently its unwillingness to talk with him while he continues his potential liability for misfeasance or nonfeasance. The court is satisfied that Mr. Krafczek was willing to work with Mr. Fitzpatrick and only after he met with no responses from Mr. Fitzpatrick did he go to the Elliott firm.

It is not lost on the court that Mr. Krafczek's son is a partner in the Elliott law firm. Based upon the evidence received by this court, no overtures were made to that firm until Mr. Krafczek's frustration in failing to receive any response to his inquiries of Mr. Fitzpatrick rose to an unacceptable level. The court stopped the hearing after Ms. Gregory's case was closed based upon the court's judgment that if anything, the actions of Mr. Fitzpatrick or his rather consistent failure to act and be appropriately responsive, not only with respect to inquiries but with respect to providing pleadings or drafts thereof prior to their filing, clearly indicated that his firm is not an appropriate firm to continue this litigation.

The court's concern is what is in the best interest of the estate and suspects both firms could competently

handle the Exide litigation. The court therefore views the critical question as which firm would be the more responsive in all respects, professionally and otherwise, to the needs and responsibilities of *both* of the co-executors. While there are hard feelings between the co-executors, they *each* have certain duties to the estate and without the proper information to execute those duties they become vulnerable to liability for failure to so act.

The court had considered peripherally whether, if Mr. Fitzpatrick and the Mylotte firm were deemed unsuitable to serve, it should entertain the appointment of a lawyer or firm new to the proceedings. To do so would unnecessarily and, in the view of the court, inappropriately impose its will on the estate. The one co-executor already chose the Elliott firm which, to the limit of its ability under strained circumstances, has prosecuted the lawsuit. To appoint a stranger to this case might well endanger the litigation, whatever its outcome in the ordinary course, and deny the express wishes of both co-executors.

For the reasons set forth above, the court entered its order of April 6, 1998.